## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CLEVEN M. HOLMES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:14-CV-04109-AJB** |
| **CAROLYN W. COLVIN,** | : | |
| ***Acting Social Security*** | : | |
| ***Commissioner,*** | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R   A N D   O P I N I O N[1]

Plaintiff Cleven M. Holmes ("Plaintiff") brought this action pursuant to

sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and

1383(c)(3), to obtain judicial review of the final decision of the Acting Commissioner

of the Social Security Administration ("the Commissioner") denying his applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits

---

[1]     The parties have consented to the exercise of jurisdiction by the
undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil
Procedure.  [*See* Dkt. Entries dated 1/8/2015 and 1/9/2015].  Therefore, this Order
constitutes a final Order of the Court.

("SSI") under the Social Security Act.[2]   For the reasons below, the undersigned **AFFIRMS** the final decision of the Commissioner.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on August 10, 2011, alleging disability commencing on March 1, 2010.  [Record (hereinafter "R") 13].[3]  Plaintiff's applications were denied initially and on reconsideration.  [*Id*.].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and an evidentiary hearing was held on April 11, 2013.  [R52-92].  The ALJ issued a decision on  May 10, 2013,

---

[2]       Title II of the Social Security Act provides for federal Disability Insurance Benefits.   42 U.S.C. § 401 *et seq*.   Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for Supplemental Security Income Benefits for the disabled.   Title XVI claims are not tied to the attainment of a particular period of insurance disability.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982). Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).   In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim. *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI). Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims, and vice versa.

[3]       The parties do not object to the ALJ's recitation of the procedural history. [*See* Docs. 8, 9].

2

finding that Plaintiff was not disabled.  [R13-20].  Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on October 31, 2014, making the ALJ's decision the final decision of the Commissioner. [R1-6].

Plaintiff then filed an action in this Court on December 30, 2014, seeking review of the Commissioner's decision.  [Doc.1].  The answer and transcript were filed on April 17, 2015.  [Docs. 4, 5].  On May 19, 2015, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 8], and on June 17, 2015, the Commissioner filed a response in support of the decision, [Doc. 9].  Plaintiff filed a reply brief on June 27, 2015.  [Doc. 10].  Neither party requested oral argument. (*See* Dkt.).  The matter is now before the Court upon the administrative record and the parties' pleadings and briefs, and is accordingly ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    STATEMENT OF FACTS

### A.    Background

Plaintiff was 51 years old on the alleged onset date of disability.  [R19, 58]. Plaintiff has at least a high school education, [R19, 61], and past relevant work as a

AO 72A
(Rev.8/8
2)

painter and roll tender.  [R19, 89-90].  Plaintiff alleges disability due to pulmonary

arterial disease, arthritis, and leg and back problems.  [R160].

**B.      Medical Records**

In May 2010, Plaintiff had a myocardial infarction and underwent off-pump

coronary artery bypass times four at Emory Hospital.  [R212-13].  At discharge,

Plaintiff was diagnosed with coronary artery disease. [R212]. Plaintiff had a follow-up

visit  with  his  surgeon,  Vinod  H.  Thourani,  M.D.,  in  June  2010.    [R738-39].

Dr. Thourani noted that Plaintiff was doing very well and walking one mile a day every

other  day.  [R738, 739].  Dr. Thourani opined that Plaintiff will make a full recovery.

[R739].

Plaintiff also saw Shazib Khawaja, M.D., at Tanner Heart & Vascular Specialists,

in June 2010 for a follow-up.  [R787-88].  Plaintiff denied shortness of breath and chest

pain and had no complaints except for some numbness in his chest area and numbness

in the left leg.  [R787].  Dr. Khawaja also noted that Plaintiff was doing well since the

bypass.  [R788].

In September 2010, Plaintiff saw Cathy Harper-Hogan, M.D., for a consultative

examination.  [R746-752].  Based on the exam, Dr. Harper-Hogan opined that Plaintiff

had  no  postural  limitations  with  standing,  stooping,  crouching,  sitting,  walking,  or

4

riding in a car. [R751]. She further opined that Plaintiff had no manipulative limitations with lifting, reaching, grasping, fingering, pushing, pulling, carrying, or holding items. [*Id*.]. Finally, Dr. Harper-Hogan opined that Plaintiff did not have any relevant visual, communicative, or workplace environmental limitations. [*Id*.].

In a follow-up visit at Tanner in October 2010, Plaintiff denied palpitations and exertional shortness of breath. [R776]. On examination, it was noted that Plaintiff had trace lower extremity swelling which resolves with elevation. [R777]. He was scheduled to return in two weeks for further evaluation of leg fatigue, burning in the calves, numbness, and tingling in lower extremities when walking. [*Id*.]. In December 2010, Plaintiff again complained of numbness, tingling, and discomfort in his right leg. [R770]. A peripheral angiography was recommended. [R771, 772]. Plaintiff underwent angiography in January 2011 which revealed complete occlusion of his right superficial femoral artery ("SFA") which was successfully recanalized and stented with excellent results. [R761]. The angiography further revealed left SFA stenosis of possibly approximately 70% and left main renal artery had stenosis of 70%. [*Id*.]. It was noted that Plaintiff had a previously normal angiography in May 2010. [*Id*.]. Dr. Khawaja also noted that the burning sensation of Plaintiff's right calf had significantly improved and he is able to walk a quarter mile. [*Id*.].

5

In June 2011, Plaintiff was treated at Grace Medical Practice with complaints of severe knee pain.  [R791].  X-rays revealed suprapatellar bursal effusion.  [R858]. Plaintiff was prescribed ibuprofen.  [R791].  Plaintiff reported knee pain again in July 2011 and was given a knee brace.  [R789].

In September 2011, Jerry Thomas, M.D., of the Disability Determination Services ("state agency"), reviewed Plaintiff's record and completed a Physical Residual Functional Capacity ("RFC") Assessment form.  [R804-11].  Dr. Thomas opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently.  [R805].  Dr. Thomas also opined that Plaintiff could stand and/or walk for six hours in a work day and sit for six hours in a workday and had unlimited pushing/pulling capabilities.  [*Id*.].  Dr. Thomas found that Plaintiff had no other limitations.  [R806-10].  Dr. Thomas cited to Dr. Harper-Hogan's consultative examination, the January 2011 angiography, and the June 2011 x-ray of Plaintiff's knee.  [R811].

In November 2011, Plaintiff saw Alexander Doman, M.D., for evaluation of right knee pain, mild left knee pain, and complaints of low back pain.  [R816].  Dr. Doman noted that the right knee showed tenderness over the medial joint line with positive effusion.  [*Id*.].  Plaintiff also exhibited pain with attempts to squat.  [*Id*.].  Exam of the

6

left knee was normal.  [*Id*.].  X-rays of the right knee revealed minimal osteoarthritis in the medial compartment of the right knee.  [*Id*.].  X-rays of the left knee and lumbar spine were normal.  [*Id*.].  Dr. Doman diagnosed Plaintiff with medial meniscus tear in the right knee.  [*Id*.].  He was prescribed Naproxen and told to return in four weeks.  [*Id*.].

Plaintiff returned to Dr. Doman in February 2012.  At that time, Dr. Doman reviewed the results of a MRI scan of the right knee which revealed degenerative changes involving the medial compartment of the knee with probable tear of the posterior horn of the medial meniscus.  [R863].  Supartz injections for the knee were recommended.  [*Id*.].  Plaintiff also complained of left shoulder pain in which an x-ray revealed that the left shoulder was normal, but there was positive impingement sign on exam of the left shoulder.  [*Id*.].  Dr. Doman diagnosed Plaintiff with impingement syndrome left shoulder and a corticosteroid injection was given with excellent relief of symptoms.  [*Id*.].  Plaintiff was given four Supartz injections to the right knee from March 22, 2012 through April 12, 2012.  [R859-62].  On April 12, 2012, Dr. Doman noted that exercises were shown to strengthen the right knee.  [R859].

In August 2012, Plaintiff was hospitalized at WellStar Douglas Hospital with complaints of chest pain, hypertension and shortness of breath.  [R872].  He underwent

AO 72A
(Rev.8/8
2)

a left heart catheterization.  [*Id*.].  Plaintiff was found to have severe coronary artery disease with occlusions of all three vein grafts.  [R873].  His ejection fraction was 40% by left ventriculogram but 50% by echocardiogram.  [*Id*.].  Plaintiff's bradycardia resolved and Plaintiff was discharged in stable condition.  [*Id*.].

On follow-up, Plaintiff met with Alfonso Rea, M.D., and admitted that he had not been compliant with his medication prior to the hospitalization.  [R916].  However, Dr. Rea noted that Plaintiff has done well since discharge except for some fatigue and mild exertional dyspnea.  [*Id*.].  Plaintiff denied chest pain, leg swelling, and palpitations.  [*Id*.].  Plaintiff returned to Dr. Rea in December 2012 for follow-up.  [R913].  Dr. Rea again noted that Plaintiff was doing well since the hospitalization without any recurrence of chest pain, but he does have some exertional dyspnea.  [*Id*.].  Plaintiff again denied leg swelling and palpitations.  [*Id*.].  Dr. Rea suggested that Plaintiff return in six months.  [R915].

### C.    Evidentiary Hearing Testimony

At the hearing, Plaintiff testified that he lives with his 17 year old son.  [R60].  Plaintiff testified that he could perform his own personal hygiene such as shaving, brushing his teeth, taking a shower, and putting on clothes.  [R66].  He also cooks for himself, does laundry, and vacuums, but his son does most of the cleaning.  [*Id.*].

8

About a year after the surgery, Plaintiff was able to walk up to a mile and his daily routine was to get up and go for a walk. [R67-68]. At that time, he could walk for about an hour. [R69]. However, Plaintiff testified that he cannot do that now; he cut back on walking about a year prior to the hearing and can only walk about 20-30 minutes now before needing to sit down. [R67-68, 69]. Plaintiff further testified that he could lift and carry up to 20 pounds because he has a really bad back, but admits that this is not in the record. [R70].

He testified that he drives almost daily. [*Id*.]. He likes to fish but has only been fishing twice in the past three years. [R71]. Plaintiff has also been to Orlando three times since his surgery: once he drove and on the other occasions he went by bus. [R71-72]. Plaintiff estimates that it is a six hour drive. [R72]. He tries to do ten minutes of exercises two to three times a week. [R73]. He does his own grocery shopping and leaves the house to pay bills. [R75]. During the day, Plaintiff testified that he is on the internet a lot. [R76].

Plaintiff testified that he had a heart catheterization the previous August. [R77-78]. The ALJ recounted Dr. Rea's notation that Plaintiff was doing well since then and did not have any recurrence of chest pain; however, Plaintiff testified that he still had chest pains. [R78]. Plaintiff testified that the note from Dr. Rea is wrong, but he

9

admits that he never told Dr. Rea the problems he faces. [*See* R79-80]. He used to take nitroglycerine for his chest pain, but stopped taking it due to its effects. [R81]. Plaintiff testified that the more he walks, the tighter his chest pain gets; on average Plaintiff rates his chest pain at a four. [R82]. Plaintiff testified that he is disabled due to his shortness of breath that makes him gasp all day, dizziness, and low energy. [R82-83].

Upon examination by his attorney, Plaintiff testified that his legs swell all the time and he has to elevate them above his heart. [R84]. Plaintiff lays down four or five hours during the workday. [R85]. He can sit for ten or twenty minutes before he gets pain or numbness. [*Id*.]. He sleeps for only a couple of hours at night. [R86]. Plaintiff stated that he has side effects from his medication including nauseousness and ulcers. [R87]. No doctor have recommended any procedures for his knees. [R88-89]. He also has trouble reaching forward due to pain in his left shoulder. [R89].

The vocational expert ("VE") testified that Plaintiff's work as a painter is classified as medium exertion and skilled and work as a roll tender as very heavy work and skilled. [R89-90].

The VE testified that a hypothetical person with Plaintiff's age, education and previous work experience, who could perform work at the light level, i.e. lift and carry

20 pounds occasionally, 10 pounds frequently, stand or walk six hours and sit six hours in an eight-hour workday with unlimited push/pull capability within the 20/10 limits could perform work as a mail sorter, cashier, and ticket seller. [R90]. If the hypothetical person would need to elevate his legs above chest level for half of the workday, the VE testified that would preclude all work. [R91].

## III.  ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2.  The claimant has not engaged in substantial gainful activity since March 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: coronary artery disease (CAD), peripheral artery disease (PAD), peripheral vascular disease (PVD), status post myocardial infarction with stent, and left shoulder pain (20 CFR 404.1520(c) and 416.920(c)).
    . . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
    . . .

11

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

. . .

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

7.   The claimant was born on July 28, 1958 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a), 416.969, and 416.969(a)).

. . .

11.  The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AO 72A
(Rev.8/8
2)

[R15-20].

In support of the decision, the ALJ stated that he reviewed Sections 4.00 and 1.00 of the Listings of Impairments and, although the ALJ found that Plaintiff has at times presented some of the signs and symptoms associated with these sections, the ALJ found that not all of the sections' specific requirements were documented throughout the relevant period in order to meet or equal the listings.  [R16].

Regarding the RFC, the ALJ discussed Plaintiff's medical records from Emory Hospital between April 2010 and June 2010.  [*Id.*].  The ALJ noted that Plaintiff's treating surgeon Dr. Thourani examined Plaintiff postoperatively and noted that Plaintiff was doing well and was walking approximately one mile every other day.  [R17].  The ALJ noted that Dr. Thourani opined that Plaintiff was doing very well and believed that Plaintiff would make a full recovery.  [*Id.*].

The ALJ next discussed the September 2010 consultative examination with Dr. Harper-Hogan in which Plaintiff reported that he had frequent chest pain almost daily, decreased sleep due to pain with shortness of breath, daily fatigue, and palpitations.  [*Id.*].  The ALJ noted that Plaintiff had decreased range of motion in the lumbar spine and normal range of motion in the upper and lower extremities.  [*Id.*].  Plaintiff had no difficulties getting on and off the table and ambulated without an

13

assistive device. [*Id*].  The ALJ noted that Dr. Harper-Hogan opined that Plaintiff had no limitations with sitting, standing, walking, stooping, or crouching; and had no manipulative, visual, communicative, or workplace environmental limitations. [*Id*.].

The ALJ then discussed Plaintiff's medical records from January 2011 through December 2012. [R17-18].  The ALJ noted that treatment notes from January 2011 through June 2011 indicated that Plaintiff had significant lifestyle limiting claudication of the right leg and that Plaintiff was able to walk a quarter of a mile before experiencing pain. [R17].  The ALJ also noted that Plaintiff received treatment for right knee pain from February 2011 through July 2011. [*Id*.].  Records through January 2012 showed that Plaintiff was negative for chest pain and palpitations. [R17-18].  Treatment notes in November 2011 showed that Plaintiff reported right knee pain and lesser left knee pain. [R18].  The ALJ noted that examination of the left knee was negative and the right knee showed minimal osteoarthritis in the medial compartment; Plaintiff was diagnosed with medial meniscus tear of the right knee. [*Id*.].  The ALJ also noted that x-rays of the spine were normal. [*Id*.].  The ALJ noted that in April 2012, Plaintiff received injections following a MRI which showed degenerative changes in his right knee. [*Id*.].  The ALJ further noted that Plaintiff was diagnosed with impingement syndrome of the left shoulder and that injections provided excellent

14

relief.  [*Id*.].  The ALJ also discussed Plaintiff's August 2012 hospitalization in which Plaintiff was admitted to undergo left heart catheterization following complaints of chest pain, hypertension, and shortness of breath with minimal exertion.  [*Id*.].  In December 2012, his treating physician Dr. Rea noted that Plaintiff continued to be treated for CAD, his PAD was stable, hypertension was controlled, and Dr. Rea indicated that Plaintiff did not need to return for six months.  [*Id*.].

Regarding Plaintiff's credibility, the ALJ found that Plaintiff's allegation of disability was not in keeping with his reported activities or the findings reported by his treating and examining physicians.  [*Id*.].  Specifically, the ALJ cited to Plaintiff's testimony in which Plaintiff testified that he does 10-minute cardio workouts two to three times a week, does household chores, takes walks, went fishing, cares for his teenage son, drove from Atlanta to Orlando, and he can lift and carry 20 pounds.  [*Id*.].  The ALJ further noted that Plaintiff's treating physicians followed and monitored his progress since his heart attack and did not place any restrictions on Plaintiff, nor did they offer an opinion as to Plaintiff's functional limitations and continued to note he was doing well.  [*Id*.].  The ALJ also cited the opinion of Dr. Harper-Hogan who found no significant deficits that would alter Plaintiff's functional capacity.  [*Id*.].  The ALJ further noted that Plaintiff's joint pain was addressed with excellent results.  [*Id*.].

15

The ALJ accorded substantial weight to the medical assessments and opinion of Dr. Harper-Hogan and significant weight to the progress notes from Emory and Tanner Heart.  [R19].

## IV.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits.

AO 72A
(Rev.8/8
2)

*See* 20 C.F.R. §§ 404.1512(a), 416.912(a).   The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity.   *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience.   *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work.   *See* 20 C.F.R.

17

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id*.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superceded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## V.   SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296

18

(N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131

19

(11th Cir. 1986) (per curiam).  Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

Plaintiff raises two issues on appeal: 1) the ALJ's determination that Plaintiff's ischemic heart disease did not meet or equal Listing 4.04 was error; and 2) the ALJ's RFC determination is not supported by substantial evidence.  [Doc. 8 at 5].

### A.   Step Three

#### 1.   Arguments of the Parties

Plaintiff argues that his impairment meets Listing 4.04.  [Doc. 8 at 5].  Plaintiff notes that he experienced a myocardial infarction on May 3, 2010 and underwent quadruple coronary artery bypass.  [*Id.* at 7].  Plaintiff argues that after the September 2010 consultative examination with Dr. Harper-Hogan, in which Dr. Harper-Hogan did not find any significant functional limitations, Plaintiff had complaints of pain in his legs.  [*Id.* (citing [R770, 777, 784, 785, 788])].  Plaintiff notes that Plaintiff had surgery

for his right leg, which was successful, but had symptoms in his left leg with 70% blockage of the saphenous femoral artery for which surgery was also suggested. [*Id*. at 7-8 (citing [R761])].  Plaintiff further notes that in August 2012, a cardiac catheterization revealed "severe coronary artery disease with occlusion in all 3 vein grafts and severe native triple vessel disease. [*Id*. at 8 (citing [R873])]. Plaintiff further notes that the LAD was occluded in the midportion and the circumflex had a 99% stenosis, while the posterior descending artery had a 99% stenosis.  [*Id*. (citing [R877-78])].   Plaintiff thus argues that this blockage would meet the blockage requirement of Listing 4.04C.1(e).  Plaintiff further notes that the cardiologist opined that the blockage was not amenable to surgery.  [*Id*.].

The Commissioner argues in response that Plaintiff failed to prove his impairments satisfied the requirements of the introductory paragraph of Listing 4.04, namely, symptoms due to myocardial ischemia while on a regimen of prescribed treatment for any consecutive twelve-month period. [Doc. 9 at 14]. The Commissioner argues that Plaintiff failed to cite evidence that he consistently had any type of angina or silent ischemia and the record does not appear to include such evidence.  [*Id*.].  To the contrary, the Commissioner argues, the record reflects that Plaintiff generally denied or did not report chest pain or related symptoms after his bypass surgery in May

AO 72A
(Rev.8/8
2)

2010.  [*Id*. (citing [R738-39, 761, 770, 776, 784, 787-88, 816, 820, 822-23, 831, 833, 841, 843, 863])].  The Commissioner argues that when Plaintiff complained of chest pain in August 2012, it was noted that he had not been compliant with medication and denied chest pain after discharge.  [*Id*. at 14-15 (citing [R870, 872, 874, 913-14, 916-18])].

The Commissioner further argues that, even if Plaintiff could satisfy the introductory paragraph, Plaintiff has failed to prove that his impairments satisfied the requirements of subsection C.  [*Id*. at 15].  First, the Commissioner argues that, although Plaintiff was diagnosed with coronary artery disease, a diagnosis is insufficient to satisfy a Listing.  [*Id*.].  Second, Plaintiff failed to provide a timely exercise tolerance test or a statement from a medical source stating an exercise test would pose a significant risk to Plaintiff.  [*Id*.].  Third, the Commissioner argues that Plaintiff failed to show that he had the angiographic evidence required by subsection C1.  [*Id*.].  Finally, the Commissioner argues that Plaintiff has also failed to show that his impairments resulted in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living to satisfy subsection C2 and the record reflects that Plaintiff did not have serious limitations on his daily activities.  [*Id*. at 15-16].

22

In reply, Plaintiff only responds to the Commissioner's argument that Plaintiff did not provide the angiographic evidence required to meet subsection C1.  [Doc. 10 at 1-3].  Plaintiff again points to the August 2012 evidence of the severe blockage of Plaintiff's coronary arteries which was not in evidence before the state agency physicians and shows a worsening of his condition.  [*Id*. at 2].

## 2.   Discussion

The Court finds that Plaintiff has not produced enough evidence to show that his impairment meets or equals Listing 4.04C.  Listing 4.04 provides that a Plaintiff must have:

> Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:
>
> . . .
>
> C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, *and* in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:
>
> 1. Angiographic evidence showing:

23

. . .

e. 70 percent or more narrowing of a bypass graft vessel; *and*

2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Pt. 404, subpt. P, App. 1 § 4.04 (emphasis added).  Plaintiff argues that his impairments meet Listing 4.04C because he has produced angiographic evidence showing that he has blockage that meets the requirement of Listing 4.04C.1.e. [Doc. 8 at 7-8].  However, this is just one requirement of the many that are listed for this listing.  Plaintiff failed to identify any symptoms due to myocardial ischemia as described in 4.00E3-4.00E7 nor his regimen of prescribed treatment.  Assuming that Plaintiff's complaints of shortness of breath meets the symptoms requirements and that he was on a regimen of prescribed treatment, the Court finds that Plaintiff has failed to meet the requirements of subsection C.  Plaintiff has not cited to evidence that he has coronary artery disease as demonstrated by angiography or other appropriate medically acceptable imaging.

Nor has Plaintiff cited evidence of an exercise tolerance test or stress test or a medical source statement that testing would present a significant risk.  Although Plaintiff points to angiographic evidence showing 70 percent or more narrowing of a

24

bypass graft vessel, perhaps demonstrating that he has met the requirements of subsection C1, Plaintiff did not make an attempt to argue that his coronary artery disease results in *very serious* limitations in the ability to independently initiate, sustain or complete activities of daily living.  Plaintiff does not dispute the ALJ's findings pertaining to his activities of daily living.  [*See* Doc. 8 at 9-10].[4]  By Plaintiff's own testimony, Plaintiff testified that he could perform his own personal hygiene such as shaving, brushing his teeth, taking a shower, and putting on clothes; cooking for himself; and performing household chores such as laundry and vacuums.  [R66].  He tries to do ten minutes of exercises two to three times a week.  [R73].  He also does his own grocery shopping and leaves the house to pay bills.  [R75].  Further, he lives with and cares for his 17 year old son.  [R60].  This evidence does not support a finding of very serious limitations in activities of daily living.

Despite the Commissioner pointing out these deficiencies in her response brief, Plaintiff failed to cite to specific evidence in his reply brief, other than evidence of artery blockage, to support that his impairment meets or equals Listing 4.04C.  As Plaintiff has failed to point to sufficient evidence to the contrary, the Court concludes

---

[4]       Plaintiff only argues that his activities of daily living should not be used as a basis to find him to be able to perform the RFC.  [*See* Doc. 8 at 9-12].

that substantial evidence supports the ALJ's determination at step three.  Accordingly, this argument does not merit remand.

**B.    RFC**

### 1.    Arguments of the Parties

Plaintiff next argues that the RFC is not supported by substantial evidence. [Doc. 8 at 8-12].  Plaintiff notes that the ALJ gave substantial weight to Dr. Harper-Hogan's opinion, but argues that Dr. Harper-Hogan could not have evaluate the later evidence submitted pertaining to his knee pain.  [Doc. 8 at 4, 8 (citing [R816, 859-62, 863, 856])].  Plaintiff also cites to a pain questionnaire he completed in August 2011 in which he indicated that he suffers from unusual fatigue, his chest "sometimes" hurts, his right knee hurts all the time and swells, his back hurts 90% of the time, and he naps or rests twice or more per day for four hours.  [*Id.* at 8-9 (citing [R176])].  Plaintiff also cited to his hearing testimony in which he testified that he has chest pains, is dizzy three to four times per week, gasps for air 20 times per day, elevates his legs due to swelling and lays down four or five hours.  [*Id.* at 9 (citing [R78, 80-85])].  Plaintiff argues that none of the activities cited by the ALJ - that Plaintiff could do 10 minute cardio workouts, household chores, walks, went fishing, cares for teenage son, and drove from Atlanta to Orlando six hours each way - indicate that he could perform a combination

of these activities for a full eight hours or even five days in a row.  [*Id*. at 9-10].

Plaintiff argues that the evidence proves the contrary, that he needed to nap for several

hours during the normal working hours of nine to five.  [*Id*. at 10].  Plaintiff also

appears to argue that the ALJ gave substantial weight to the opinion of Dr. Harper-

Hogan and significant weight to the records from Emory which could not contemplate

the development of significant blockage in Plaintiff's bypassed arteries and do not

discuss Plaintiff's severe knee condition.  [*Id*. at 10-11].

Plaintiff also argues that the ALJ did not explain how he came to the

determination that Plaintiff was capable of light work.  [*Id*. at 11].  Plaintiff argues that

the ALJ gave the most weight to Dr. Harper-Hogan's opinion, but she did not find any

limitations at the time of her examination.  [*Id*.].  Plaintiff argues that while the ALJ

appears to have relied upon the opinion of Dr. Thomas, this opinion does not provide

substantial evidence as Dr. Thomas did not review the later evidence demonstrating a

worsening of Plaintiff's orthopedic and cardiovascular conditions.  [*Id*. at 11-12].

Plaintiff also argues that Dr. Thomas' evaluation of Plaintiff's cardiac condition is

outside his area of expertise.  [*Id*. at 12].

In response, the Commissioner argues that the ALJ's RFC and credibility

determinations are supported by substantial evidence.  [Doc. 9 at 17].  In support, the

27

Commissioner cites to Plaintiff's medical records which indicated that Plaintiff quickly recovered after his bypass surgery and his examinations were unremarkable. [*Id*. at 18-19]. The Commissioner acknowledges that Plaintiff was hospitalized in August 2012, but points out that he had been noncompliant with his medication. [*Id*. at 19]. The Commissioner also cited to Dr. Rea's notes since August 2012 in which Plaintiff had few symptoms and no significant clinical findings once he was back on his medication regimen. [*Id*. (citing [R874, 913-18])].

The Commissioner further argues that the objective findings regarding Plaintiff's knee, back and left shoulder do not indicate that Plaintiff was unable to perform light work. [*Id*.]. The Commissioner argues that Plaintiff did not complain of knee pain until more than a year after his alleged onset date and neither clinical examinations nor diagnostic studies revealed significant abnormalities. [*Id*.]. The Commissioner also argues that the objective clinical and diagnostic findings do not indicate that Plaintiff's left shoulder would have prevented him from performing light work. [*Id*. at 19-20]. Thus, the Commissioner argues that the medical records provide substantial evidence to support the ALJ's credibility and RFC determinations. [*Id*. at 20].

The Commissioner further argues that the opinions of Drs. Harper-Hogan and Thomas support the ALJ's determinations. [*Id*. at 20 & n.3]. Moreover, the

28

Commissioner argues that no treating or examining doctor imposed restrictions on Plaintiff's ability to work.  [*Id*. at 20].  Finally, the Commissioner argues that the ALJ properly considered Plaintiff's activities in assessing Plaintiff's credibility.  [*Id*. at 21].  The Commissioner further argues that Plaintiff's activities are not indicative of disabling limitations, and the ALJ did not rely solely on Plaintiff's activities in evaluating his credibility or determining that Plaintiff is not disabled.  [*Id*. at 21-22].

Plaintiff did not address the Commissioner's arguments in his reply brief.  [*See* Doc. 10, *passim*].

### 2.    Discussion

Plaintiff's arguments regarding the RFC rest on the evidence submitted after the consultative examination with Dr. Harper-Hogan; particularly, Plaintiff appears to argue that the RFC does not account for Plaintiff's worsening heart condition or his knee impairment.  [*See* Doc. 8 at 8-12].  Plaintiff also argues that the ALJ improperly considered his activities of daily living by finding that such activities do not equate to being able to perform light work for eight hours per day, five days per week.  [*See* Doc. 8 at 9-10].  Finally, Plaintiff appears to argue that the ALJ's RFC determination is unsupported because the ALJ did not explain how he arrived at the

29

RFC and appears to argue that the ALJ must specifically rely on a doctor's opinion of the RFC. [*See id.* at 11-12].

The Court finds that substantial evidence supports the RFC determination. Plaintiff does not demonstrate that any worsening of his symptoms impacted the RFC. Plaintiff does not argue that the ALJ failed to consider the worsening of his heart condition or his knee impairments. To the contrary, the decision reflects that the ALJ considered evidence since the September 2010 consultative examination with Dr. Harper-Hogan including the angiography which revealed 70% blockage in the left saphenous femoral artery and the August 2012 hospitalization in which Plaintiff underwent a cardiac catheterization for chest pain and shortness of breath. [R17, 18]. The ALJ also discussed Plaintiff's allegations and the medical records associated with his knee pain. [R18]. While Plaintiff appears to argue that this evidence does not support a finding that Plaintiff can perform light work, it is not this Court's job to reweigh the evidence. *Dyer*, 395 F.3d at 1210. Rather, this Court's job is to determine if the ALJ considered all the evidence of record and if so, whether substantial evidence supports the conclusion made by the ALJ. Moreover, the Court must affirm "[i]f the Commissioner's decision is supported by substantial evidence, . . . even if the proof

30

preponderates against it." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer*, 395 F.3d at 1210).

Moreover, Plaintiff's own admissions support the RFC. Plaintiff testified that he could lift and carry up to 20 pounds. [R70]; *see also* 20 C.F.R. § 404.1567(b). Plaintiff also testified that he drives from Atlanta to Orlando six hours each way. [R72]; *see also* 20 C.F.R. § 404.1567(b). Although the ALJ acknowledged Plaintiff's medical records of his right knee impairment, the ALJ did not find this to be a severe impairment, [*see* R15], and Plaintiff has not presented any medical source opinion demonstrating any functional limitations from this impairment. Moreover, Plaintiff testified that no procedures were recommended for his knee impairment and he was being treated with injections. [R88-89; 859-62]. Nonetheless, Plaintiff testified that he does 10 minute cardio exercises that are "almost like skating" and he walks up and down stairs multiple times a day. [R70, 73]. Further, the records reflect that his knee was strengthened from exercises. [R859].

Moreover, while Plaintiff argues that he has suffered a worsening of his condition based on his August 2012 hospitalization, the evidence indicates that this is a one-time setback due to noncompliance with medication and later treatment notes stated that Plaintiff was doing well since the setback without chest pain, palpitations,

31

or leg swelling. [R913-17]. Although Plaintiff testified that he experiences chest pain, gasps for air 20 times and his legs swell daily, as noted by the ALJ at the hearing, this was not reported to Dr. Rea and Plaintiff in fact denied these occurrences. [R79, 913-16].

Plaintiff does not challenge the ALJ's credibility finding except to argue that his daily activities do not prove he could do them for eight hours per day, five days per week. However, the ALJ did not only rely on Plaintiff's activities of daily living in determining the RFC and, for the reasons explained above, the Court finds that his daily activities support the RFC determination. Moreover, unlike the claimant in Plaintiff's cited case of *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), there are no opinions in the record that offers limitations greater than those set forth by the ALJ. Accordingly, the Court finds that substantial evidence supports the RFC.

## VII.  CONCLUSION

For the reasons above, the Court **AFFIRMS** the final decision of the Commissioner. The Clerk is **DIRECTED** to enter final judgment in Defendant's favor.

**IT IS SO ORDERED and DIRECTED**, this the 30th day of March, 2016.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE